Carrie C. Barber, Respondent, v. Fannie S. Brundage, Appellant, Impleaded with Others.

Real Property — Descent to Intestate's Mother for Life — Reversion to Brother and Sister Vests upon his Death. Under the Revised Statutes (1 R. S. 752, § 6), providing that " If the intestate shall die without descendants and leaving no father, or leaving a father not entitled to take the inheritance under the last preceding section, and leaving a mother, and a brother or sister, or the descendant of a brother or sister, then the inheritance shall descend to the mother during her life, and the reversion to such brothers and sisters of the intestate as may be living, and the descendants of such as may be dead," the reversion vests in the brothers and sisters living at the time of the intestate's death, and is not suspended by the outstanding life estate.

*Barber* v. *Brundage*, 50 App. Div. 123, affirmed.

(Argued December 2, 1901; decided January 14, 1902.)

Appeal from a final judgment of the Supreme Court, entered April 23, 1900, upon an order of the Appellate Division in the fourth judicial department, affirming an interlocutory judgment entered upon the report of a referee in an action of partition.

The facts, so far as material, are stated in the opinion.

*J. W. Russell* for appellant. Upon the death of Monroe Brundage his real estate descended to Sarah Brundage during her life, and the reversion to Franklin Brundage, Grattan H. Brundage and Eliza Nellis. (1 R. S. 752, § 6; 754, § 27.) Sarah Brundage took a freehold estate in the lands of which Monroe Brundage died seized. (4 Kent's Comm. 24.) During the continuance of the outstanding freehold estate in Sarah Brundage the descent of the reversion was suspended, and the interests of Franklin Brundage, Grattan H. Brundage and Eliza Nellis therein were inchoate and contingent, depending upon their surviving their mother. (Litt. § 8; Co. Litt. 14 b; 2 Black. Comm. 209; 3 Cruise, 412; 4 Kent's Comm. 385, 387; *Ratcliff's Case*, 3 Coke, 37; *Goodtitle* v. *Newman*, 3 Wils. 516; *Doe* v. *Hutton*, 3 B. & P. 643; *Jackson* v.

*Hendricks,* 3 Johns. Cas. 214; *Bates* v. *Shraeder,* 13 Johns. 260; *Jackson* v. *Hilton,* 16 Johns. 96; *Vanderheyden* v. *Crandall,* 2 Den. 9; *Wendell* v. *Crandall,* 1 N. Y. 491; *Goodright* v. *Searle,* 2 Wils. 29; *Wimple* v. *Fonda,* 2 Johns. 288.) The interests of Eliza Nellis, Franklin Brundage, Walter W. Nellis and Monroe Nellis being inchoate, and, therefore, suspended, during the lifetime of Sarah Brundage, nothing passed under the wills of the former or the deed of the latter. (1 R. S. 739, § 143.) Upon the death of Sarah Brundage the real estate of which Monroe Brundage died seized descended to his then living heirs, being his seven nephews and nieces, and they being all of equal degree of consanguinity, took equally. (1 R. S. 752, § 7.) Upon the death of Sarah Brundage, the interest of Walter W. Nellis, being one-seventh, passed, by way of estoppel under his warranty deed, to the plaintiff, subject to the inchoate right of dower therein of Etta Nellis, his wife, which inchoate right of dower did not pass, the wife not joining in the warranty. (*Tefft* v. *Munson,* 57 N. Y. 97; *Sparrow* v. *Kingman,* 1 N. Y. 242.)

*John F. Parkhurst* for respondent. The brothers and sisters of Monroe Brundage, at his death, inherited an immediate vested reversion in his real estate which was descendible, devisable and alienable, subject only to the life estate of his mother. (1 R. S. 752, 755, §§ 6, 28; Fowler on Real Prop. 611, 620, 621, 796–798; 4 Kent's Comm. 388, 411, 412; 2 Hilliard on Real Prop. 190; Gerard's Titles to Real Estate [2d ed.], 376, 378; *Wheeler* v. *Clutterbuck,* 52 N. Y. 67; *Dodge* v. *Stevens,* 105 N. Y. 588; *Hennessy* v. *Patterson,* 85 N. Y. 91.) If the appellant's contention is right, she has no interest whatever in this action. (*Bushman* v. *Hudson,* 20 Wend. 53; *Durando* v. *Durando,* 23 N. Y. 331; *House* v. *Jackson,* 50 N. Y. 161.)

BARTLETT, J. This is an action to partition about three hundred acres of land in Steuben county which was owned by Monroe Brundage at the time of his death. Monroe

24

Brundage died in 1875, intestate, without widow or lineal descendants, and left him surviving as his only heirs at law his mother, Sarah Brundage, his brothers, Franklin Brundage and Gratton H. Brundage, and his sister, Eliza Nellis.

A single question is presented by this appeal. The appellant, Fannie S. Brundage, a granddaughter of the intestate, insists that upon the death of Monroe Brundage, owing to the intervening life estate in his mother, that the brothers and sister of the intestate took no vested interest in the fee, but that it remained suspended under the rule of the common law until the falling in of the life estate, which occurred in January, 1899. On the other hand, it is urged by the plaintiff, also a granddaughter of intestate, that under the Revised Statutes the brothers and sister of Monroe Brundage at his death inherited an immediate vested reversion in his real estate which was descendible, devisable and alienable subject only to the life estate of his mother. The Special Term adopted the plaintiff's position and the Appellate Division has affirmed the judgment.

It is unnecessary to follow the ingenious and novel argument of appellant's counsel, which seeks to establish the position that the descent of the real estate of intestates, in some instances, is still governed by the rule of the common law. The letter and spirit of the Statute of Descents leading to a contrary view are so clear and have been so long recognized by the courts and the profession in the settlement of estates that the question cannot be regarded as open for discussion.

The Revised Statutes provide as follows (1 R. S. 752, § 6; Banks' R. S. [9th ed.] vol. 2, p. 1825, § 6) : "If the intestate shall die without descendants and leaving no father, or leaving a father not entitled to take the inheritance under the last preceding section, and leaving a mother, and a brother or sister, or the descendant of a brother or sister, then the inheritance shall descend to the mother during her life, and the reversion to such brothers and sisters of the intestate as may be living, and the descendants of such as may be dead,

according to the same law of inheritance hereinafter provided. If the intestate in such case, shall leave no brother or sister, nor any descendants of any brother or sister, the inheritance shall descend to the mother in fee."

On the face of this section it is obvious that when the revisers used the words " reversion to such brothers and sisters of the intestate as may be living," they intended such as were living at the time of intestate's death. This, however, was not left to construction, as will be seen by reference to section twenty-eight of the same chapter, containing the section quoted (1 R̂. S. 755, § 28), which reads as follows : " Whenever, in the preceding sections, any person is described as living, it shall be understood that he was living at the time of the death of the intestate, from whom the descent came ; and whenever any person is described as having died, it shall be understood that he died before such intestate."

It is thus made clear that on the death of Monroe Brundage the life estate vested in his mother and the fee in his sister and two brothers, possession and enjoyment being postponed until the falling in of the life estate. The sister and brothers of the intestate took a vested future estate under the Revised Statutes (1 R. S. 723, § 13), which defines such an estate to be " when there is a person in being, who would have an immediate right to the possession of the lands, upon the ceasing of the intermediate or precedent estate."

This court in *Wheeler* v. *Clutterbuck* (52 N. Y. 67, 71) had occasion to construe section six, above quoted, among other sections material at that time, and expressly held that " this outstanding life estate did not suspend the descent."

The above construction has also been given to this statute by many text writers and a large number of cases that need not be cited. It is quite sufficient to quote the comments of Chancellor KENT (Vol. 4, Kent's Com. 388) upon the rule of the common law and its abolition by the Revised Statutes, as follows : ." The rule of the common law existed in New York, under the statute of descents of 1786 ; and the heir was to deduce his title from the person dying seized. It had been

repeatedly held, that during the existence of a life estate, the heir on whom the reversion or remainder was cast, subject to the life estate, was not so seized as to constitute him the *possessio fratris* or *stirps* of descent, if he died pending the life estate; and the person claiming as heir must claim from a previous ancestor last actually seized. If the estate in fee had been acquired *by descent*, it was necessary that there should have been an entry to gain seizin *in deed*, to enable the owner to transmit it to his heir; and, therefore, if the heir, on whom the inheritance had been cast by descent, died before entry, his ancestor, and not himself, became the person last seized, and from whom the title as heir was to be deduced. If, however, the ancestor acquired the estate *by purchase*, he was, in many cases, allowed to transmit the estate to his heirs, though he had not had actual seizin in himself. But the New York Revised Statutes have wisely altered the pre-existing law on this subject; and they have extended the title by descent generally to all the real estate owned by the ancestor at his death; and they include in the descent every interest and right, legal and equitable, in lands, tenements and hereditaments, either seized or possessed by the intestate, *or to which he was in any manner entitled,* with the exception of leases for years and estates for the life of another person."

The judgment should be affirmed, with costs.

PARKER, Ch. J., GRAY, MARTIN, VANN, CULLEN and WERNER, JJ., concur.

Judgment affirmed.